IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLARISSA DIAZ** : | CIVIL ACTION |
| *Plaintiff* : | |
| : | NO. 16-0205 |
| **v.** : | |
| : | |
| **COMER RUCKER**, *et al.* : | |
| *Defendants* : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    JULY 29, 2016

## MEMORANDUM OPINION

**INTRODUCTION**

On January 15, 2016, Clarissa Diaz ("Plaintiff") filed a civil rights complaint under 42 U.S.C. § 1983 ("§ 1983") against Scott Paul ("Defendant Paul"), Deputy District Director at the Pennsylvania Board of Probation and Parole ("PBPP"), and Michael Ward ("Defendant Ward"), (collectively "Moving Defendants"), Comer Rucker ("Defendant Rucker"),[1] her former probation officer, and ten John Doe defendants ("Doe Defendants") affiliated with and/or employed by the PBPP. [ECF 1]. In her complaint, Plaintiff essentially describes the sexual misconduct, sexual intimidation, mistreatment, and retaliation Defendant Rucker inflicted on her while she was a probationer under his direct supervision. Specifically, in Counts VI, VII, and VIII, Plaintiff avers that Moving Defendants violated her constitutional rights when Moving Defendants failed to properly screen, hire, train, and/or supervise; failed to establish and execute constitutionally adequate policies and procedures; and participated in a civil conspiracy to violate her constitutional rights.

On February 12, 2016, Moving Defendants jointly filed the instant *motion to dismiss* pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). [ECF 5]. On March

---

[1]     On April 8, 2016, Defendant Rucker filed an answer to the complaint. [ECF 12].

10, 2016, Plaintiff filed a brief in opposition, [ECF 8], to which Moving Defendants filed a reply on March 16, 2016. [ECF 11]. The issues have been fully briefed and this matter is ripe for disposition. For the reasons stated herein, Moving Defendants' motion to dismiss is granted.

**BACKGROUND**

When ruling on the motion to dismiss, this Court must accept, as true, the relevant and pertinent factual allegations in Plaintiff's complaint,[2] which are summarized as follows:

> On January 9, 2014, Plaintiff pled guilty to gun and drug offenses, and was sentenced by the Connecticut Superior Court to a three year term of probation, with special restrictions, *inter alia,* substance abuse evaluation and treatment, random urine screenings, no possession of weapons/drugs, no new arrests, and 25 hours of community service. (Compl. at ¶¶ 42, 43).
>
> On January 16, 2014, Plaintiff's probation supervision was transferred from Connecticut to Philadelphia, Pennsylvania. (*Id.* at ¶ 44). Defendant Rucker was assigned as her probation officer. (*Id.* at ¶ 46). Defendant Paul, Deputy District Director at the PBPP, and Defendant Ward, a Supervisor, both had supervisory responsibilities over Defendant Rucker, and/or were responsible for the daily administration, implementation, and enforcement of policies at the Northeast Division of the Philadelphia District Office where Defendant Rucker was assigned. (*Id.* at ¶¶ 16, 21, 22, 24, 25).
>
> As her probation officer, Defendant Rucker monitored Plaintiff's behavior and virtually had complete control and authority over every aspect of Plaintiff's life. (*Id.* at ¶ 48). As such, if he believed Plaintiff was in violation of the terms of her probation, Defendant Rucker could either petition the court to find Plaintiff in violation of the terms of her probation, initiate judicial proceedings to revoke Plaintiff's probation, and/or arrest Plaintiff. (*Id.* at ¶¶ 49-50). Using equipment provided to him by the PBPP, including a cell phone and an official vehicle, Defendant Rucker met with Plaintiff regularly, conducted unannounced home visits, and routinely called her. (*Id.* at ¶¶ 51-54).
>
> Shortly after Defendant Rucker began supervising Plaintiff's probation, Defendant Rucker "began to engage in a disturbing and pervasive pattern of sexually inappropriate and abusive behavior toward" Plaintiff, (*Id.* at ¶ 57); at times in his office. (*Id.* at ¶¶ 63, 77-78). During one of those occasions, Defendant Rucker verbally abused and threatened Plaintiff with revoking her

---

[2] *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (holding that when presented with a motion to dismiss for failure to state a claim, a district court "must accept all of the complaint's well-pleaded facts as true.").

2

parole after she admitted to using illegal drugs over the weekend. (*Id.* at ¶¶ 64, 65). Many of these unsolicited advances and abuses occurred in the presence of other unnamed officers or supervisors. (*Id.* at ¶ 78). Defendant Rucker's conduct became increasingly aggressive, culminating with coerced sexual intercourse with Plaintiff at Defendant Rucker's apartment. (*Id.* at ¶¶ 58, 103, 118). Plaintiff was constantly fearful that reporting Defendant Rucker's behavior would result in his retaliation against her. (*Id.* at ¶ 56).

Initially, Defendant Rucker told Plaintiff that she did not have to perform the 25 hours of community service as part of her special probationary conditions. (*Id.* at ¶ 61). However, after an encounter in which Defendant Rucker coerced Plaintiff to have sex with him and she resisted, Defendant Rucker instructed Plaintiff that she would have to perform the 25 hours of community service. (*Id.* at ¶ 124). Thereafter, Defendant Rucker ordered Plaintiff to attend a much more intensive outpatient drug treatment program, (*Id.* at ¶ 124), which Plaintiff believed was an attempt to silence her about his inappropriate conduct. (*Id.* at ¶ 125). Plaintiff alleges that Defendant Rucker's "retaliation against [Plaintiff] was effectuated with the participation and/or tacit approval, acquiescence or assent of other officers and/or supervisors." (*Id.* at ¶ 4).

Plaintiff's mental health deteriorated following these encounters with Defendant Rucker, and she was hospitalized and treated at various times between April 3, 2014, and June 27, 2014. (*Id.* at ¶¶ 126-27). During her hospitalizations, Plaintiff revealed that she was a victim of a sexual assault by her probation officer. (*Id.* at ¶ 128). This disclosure led to an investigation of Defendant Rucker who, in response, retaliated and punished Plaintiff by directing and approving another officer to order Plaintiff to attend an inpatient drug treatment program for 90 days. (*Id.* at ¶¶ 130, 133). When Plaintiff was released from the inpatient treatment, Defendant Rucker was no longer her probation officer. (*Id.* at ¶ 134). Plaintiff claims that Defendant Rucker was discharged from his employment because he engaged in an improper sexual relationship with her, in violation of PBPP policy governing officer conduct. (*Id.* at ¶ 135).

In their motion to dismiss, Moving Defendants argue that Plaintiff's § 1983 claims, in Counts VI-VIII, fail because: (1) the complaint is devoid of any facts supporting personal involvement by Moving Defendants in any alleged constitutional violation, and the doctrine of *respondeat superior* does not support liability against them under § 1983; and (2) Plaintiff's conspiracy claim consists only of broad and conclusory allegations and should be dismissed.

## LEGAL STANDARD[3]

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions, however, may be disregarded and are not entitled to the presumption of truth. *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). When considering a motion to dismiss, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Instead of merely alleging the plaintiff's entitlement to relief, "[a] complaint has to 'show' such an entitlement with its facts." *Id.* at 211. Although specific details are not required, a complaint must "set forth sufficient facts to support plausible claims." *Id.* at 212; *see* Fed. R. Civ. P. 8(a) (providing that only a "short and plain statement of the claim showing that the pleader is entitled to relief" is required in a complaint). While the "plausibility standard is not akin to a 'probability requirement,' . . . [the standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a plaintiff must allege facts that "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 570). A complaint's "[f]actual allegation must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[3] In their motion to dismiss pursuant to Rule 12(b)(1), Moving Defendants argue that this Court lacks subject matter jurisdiction to the extent Moving Defendants are being sued in their official capacities since such a claim for damages under § 1983 is barred. In her response, Plaintiff concedes that the Eleventh Amendment bars claims against state actors sued in their official capacities, and that state officials are not considered "persons" within the meaning of § 1983. Accordingly, the claims asserted against Moving Defendants in their official capacities are dismissed. Plaintiff's § 1983 claims against Moving Defendants in their individual and personal capacities remain the subject of, and are addressed by, this Memorandum Opinion.

4

## DISCUSSION

Moving Defendants argue that Plaintiff's complaint should be dismissed because it is devoid of any facts showing Moving Defendants' personal involvement in any constitutional violation, and *respondeat superior* is not an accepted basis for liability under § 1983. Moving Defendants also argue that Plaintiff's civil conspiracy claim fails because it consists only of broad and conclusory allegations without any supportive facts. This Court will address Moving Defendants' arguments in turn.

*Plaintiff's Failure to Properly Screen, Hire, Train, and/or Supervise and Constitutionally Inadequate Policies and Procedures Claims*

At Counts VI and VII of her complaint, Plaintiff avers that her constitutional rights were violated by Moving Defendants' failure to properly screen, hire, train, and/or supervise Defendant Rucker, and their failure to establish and enforce constitutionally adequate policies and procedures.[4] (Compl. at ¶¶ 190, 197). To state a claim under § 1983, a plaintiff must allege facts sufficient to show that: (1) she was "deprived of a right secured by the Constitution or laws of the United States"; and (2) "the alleged deprivation was committed under color of state law."[5] *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). For a § 1983 claim against state officials, who are sued in their individual capacities on a supervisory liability theory, "a

---

[4] This Court notes at the outset that Plaintiff does not pursue a traditional *Monell* claim, in that she is not seeking to establish liability against a municipality or municipal policymaker by pointing to either an officially adopted policy or custom that is the moving force behind a constitutional violation. Instead, her claims are based on a supervisory liability theory arising out of Moving Defendants' personal involvement in Defendant Rucker's sexual misconduct, and Moving Defendants' execution of deficient policies, including their failure to train and supervise Defendant Rucker.

[5] Moving Defendants argue that Plaintiff's claims under § 1983 generally are insufficient because they fail to identify the specific constitutional "provision" under which Plaintiff sues. However, the cases on which Moving Defendants rely hold *only* that a plaintiff must identify the constitutional "right" that was allegedly violated, and not that a plaintiff must identify the constitutional "provision" under which the plaintiff sues. *See McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003) (discussing that the threshold inquiry in § 1983 cases is whether the plaintiff has alleged the deprivation "of an actual constitutional right."). Here, Plaintiff has adequately identified the constitutional rights allegedly violated. In her complaint, she specifically alleges violations of her "constitutional rights to bodily integrity and personal security, to be free from false arrest and unlawful confinement or detention, to be treated equally and fairly under the law and to speak freely without fear of punishment, retaliation, reprisal or repercussion . . . ." (Compl. at ¶ 187).

plaintiff must allege facts sufficient to raise a plausible inference that defendants were *personally involved* in violating the plaintiff's constitutional rights." *Thomas v. Barkley*, 2013 WL 4786124, at *6 (W.D. Pa. Sept. 6, 2013) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1990-91 (3d Cir. 1995)) (emphasis added); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that the defendant "must have personal involvement in the alleged wrongs."). A defendant in a civil rights action, however, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Additionally, a supervisor's general responsibility over an office is not sufficient to establish personal involvement. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations "must be made with appropriate particularity." *Id.*; *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (affirming the dismissal of a complaint that did not "contain even a remote suggestion that [the supervisor] had contemporaneous, personal knowledge of [the alleged constitutional violation] and acquiesced in it."). To be liable for acquiescing, a supervisor defendant must be aware of the violation of a plaintiff's rights and fail to take action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) ("Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (*i.e.*, tacitly assented to or accepted) the subordinate's conduct."); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1479 (3d Cir. 1990) (finding that a supervisor acquiesced in the constitutional violation where he "was aware of the problems . . . but did nothing to stop them," and the inappropriate behavior

6

was "so offensive and regular that [it] could not have gone unnoticed by the man who was ultimately responsible for the conduct of the [employees].").

Similarly, courts have recognized a cause of action under § 1983 in various "failure to" contentions.[6] *See, e.g., Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997) (evaluating a plaintiff's failure to screen in hiring claim); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (evaluating a plaintiff's failure to train claim); *Tobin v. Badamo*, 78 F. App'x 217 (3d Cir. 2003) (evaluating a plaintiff's failure to supervise claim). In order to state a "failure to" claim, a plaintiff must allege facts to show the supervisor's deliberate indifference to the plaintiff's rights. *See Sample*, 885 F.2d at 1118 (plaintiff must allege facts to show specifically "what it is that [the superior] failed to do that evidences his deliberate indifference.").

The existence of a deliberate indifference varies depending on the circumstances alleged. As an example, in a failure to train claim, the complaint must allege that "city policymakers [were] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Wiggs v. City of Phila.*, 2014 WL 772538, at *5 (E.D. Pa. Feb. 27, 2014) (citations omitted). Similarly, for a failure to supervise claim, deliberate indifference can be shown when: "1) municipal supervisors had contemporaneous knowledge of the offending incident or of a 'prior pattern of similar incidents,' and 2) the supervisors' action or inaction somehow communicated approval of the offending

---

[6] Municipalities are not the only actors who can be liable for *Monell* and *Canton*-type claims. Pursuing these claims against state officials sued in their individual capacities is not precluded by federal case law. *See Dill v. Oslick*, 1999 WL 508675, at *3, 6-7 (E.D. Pa. July 19, 1999) (analyzing the plaintiff's § 1983 "failure to" claims against two supervisors after conceding that these state employees are immune from being sued in their official capacities consistent with the Eleventh Amendment). Therefore, this Court will consider case law applicable to municipal liability as similarly applicable to liability for state officials in their individual and personal capacities. *See Sample*, 885 F.2d at 1117-18 (discussing that "[a]lthough the issue [with the plaintiff's § 1983 claim] is one of individual liability rather than of the liability of a political subdivision, we are confident that, absent official immunity, the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve.").

behavior." *Tobin*, 78 F. App'x at 219 (citing *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Establishing "liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Establishing liability on a failure to train or supervise claim generally requires that such failure has caused a pattern of violations. *Tobin*, 78 F. App'x at 219; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). However, in the absence of a pattern of violations, a plaintiff can show deliberate indifference only under a narrow set of circumstances. *Connick v. Thompson*, 563 U.S. 51, 71 (2011). That is, a plaintiff must allege facts sufficient to show that "it was obvious that a policy or custom would lead to constitutional violations." *Berg*, 219 F.3d at 277; *see, e.g.*, *City of Canton*, 489 U.S. at 390 n.10 (explaining that an example of single-incident failure to train liability would be to give police officers firearms but fail to train them on the appropriate use of deadly force). "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton*, 489 U.S. at 391.

Likewise, for a failure to screen in hiring claim, a plaintiff must allege facts sufficient to show that "the decision to hire reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Langweiler v. Borough of Newton*, 2010 WL 5393529, at *8 (E.D. Pa. Dec. 29, 2010) (citing *Brown*, 520 U.S. at 412). Deliberate indifference is shown only where a reasonable policymaker would conclude that "the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.

In addition, courts have also recognized that supervisors may be liable under § 1983 as policymakers for constitutionally inadequate policies and procedures. *Chavarriaga v. New*

8

*Jersey Dep't of Corrections*, 806 F.3d 210, 223 (3d Cir. 2015). To state a claim against a policymaker, a plaintiff must allege facts sufficient to show "that the official established or enforced policies and practices directly causing the constitutional violation." *Id*. In order to be liable, a policymaker must be considered "the moving force [behind] the constitutional violation[,]" which requires a showing that the policymaker "has exhibited deliberate indifference to the plight of the person deprived." *Sample*, 885 F.2d at 1118; *see McHugh v. Koons*, 2015 WL 9489593, at *11 (E.D. Pa. Dec. 30, 2015) (dismissing the plaintiff's § 1983 claims against two supervisors "on the basis of them being policymakers" because the plaintiff did not "set forth any allegations of personal involvement.").

Guided by these decisions, this Court turns to Moving Defendants' arguments. As noted, Moving Defendants argue that Plaintiff's § 1983 claims generally fail because the complaint is devoid of sufficient facts to show the requisite personal involvement in the alleged underlying constitutional violation.[7] After carefully reviewing the complaint, this Court agrees.

A claim under § 1983 against state officials in their individual capacities based on a supervisory liability theory must contain facts that raise a plausible inference that Moving Defendants were personally involved in violating Plaintiff's constitutional rights.[8] While Plaintiff alleges that Moving Defendants had general supervisory responsibility over the Northeast Division of the Pennsylvania District Office where Defendant Rucker worked, such general allegations alone do not suffice to establish Moving Defendants' personal involvement

---

[7] Moving Defendants also argue that *Monell* and *Canton* do not apply to state officials pursuant to *O'Hara v. Indiana Univ. of Pennsylvania*, 171 F. Supp. 2d 490 (W.D. Pa. 2001) and *Thomas v. Barkley*, 2013 WL 4786124, at *5 (W.D. Pa. Sept. 6, 2013). However, the holdings of these cases only applied to state officials sued *in their official capacity*. Therefore, since Plaintiff has conceded that Moving Defendants have Eleventh Amendment immunity for claims brought against them in their official capacities, and proceeds now against Moving Defendants only in their individual capacities, the Moving Defendants' reliance on these cases is misplaced.

[8] As stated, Plaintiff does not assert claims against a municipality. Instead, she seeks to hold Moving Defendants liable as state officials in their individual and personal capacities. As Plaintiff correctly alleges in her opposition and as stated *supra*, pursuing *Monell* and *Canton*-type claims against a state official sued in their individual capacity is not precluded by federal case law.

9

and liability. Indeed, the only averment specifically referencing Moving Defendants appears in the introductory portion of the complaint and simply mentions their respective positions and responsibilities within the PBPP. Moving Defendants are not identified nor mentioned in any relevant factual allegations, which is a fatal omission. *See, e.g., Gregg v. Pettit*, 2009 WL 57118, at *9 (W.D. Pa. Jan. 8, 2009) (dismissing the complaint for failure to state a claim where the only specific allegations against a defendant "appear in the introductory portion of the complaint and simply set forth who [the defendant] is and where he is employed."). Further, Plaintiff does not specifically allege that Moving Defendants witnessed and/or were made aware of Defendant Rucker's sexual misconduct, which is only alleged to have occurred at various locations *outside of the office.* At most, and upon information and belief,[9] Moving Defendants are implicitly charged with having *possibly* witnessed some interactions between Plaintiff and Defendant Rucker where he verbally abused her in his office. However, this is insufficient to demonstrate a deliberate indifference to or personal involvement in any constitutional violation by Moving Defendants. Plaintiff's bald contentions, without more, do not establish that Moving Defendants directed and/or had actual knowledge and acquiesced in the constitutional violation committed by Defendant Rucker.

Plaintiff's "failure to" claims fare no better. Plaintiff must allege facts sufficient to show that Moving Defendants were deliberately indifferent to the rights of Plaintiff and that this deliberate indifference was the cause of the constitutional violation. Plaintiff has failed to do so. The complaint contains no well-pleaded assertions regarding any specific conduct by the Moving Defendants. As to her failure to train claim, Plaintiff fails to sufficiently allege that Moving

---

[9] Notably, the majority of the complaint's allegations regarding Moving Defendants are based "upon information and belief." (*See, e.g.*, Compl. at ¶¶ 22, 24, 25). The Supreme Court has held that a plaintiff may plead allegations based upon information and belief, "so long as he does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible." *McDermott v. Clondalkin Group, Inc.*, 2016 WL 2893844, at * 4 (3d Cir. May 18, 2016). Plaintiff fails to do so here.

10

Defendants were on actual or constructive notice that a particular omission in their training program caused Defendant Rucker to violate Plaintiff's constitutional rights. As to Plaintiff's failure to supervise claim, while Plaintiff concedes that she cannot support a claim of deliberate indifference based on a prior pattern of constitutional deprivations without the benefit of discovery, she fails to allege facts sufficient to show that Moving Defendants had contemporaneous knowledge of Defendant Rucker's sexual misconduct and/or that Moving Defendants' action or inaction somehow communicated approval of Defendant Rucker's behavior. Plaintiff's claim does not fall within the narrow set of circumstances where deliberate indifference can be shown absent a pattern of prior violations because it is not sufficiently obvious that the PBPP's policy or custom would lead to the constitutional violations alleged here, *i.e.*, Defendant Rucker's alleged sexual misconduct *outside of the office*. Finally, as to Plaintiff's failure to screen claim, Plaintiff has not alleged facts sufficient to show that it was plausible that the plainly obvious consequence of hiring Defendant Rucker was the violation of Plaintiff's rights.

Plaintiff's claim for constitutionally inadequate policies and procedures fails for the same reasons. As stated, Plaintiff must allege facts sufficient to show that Moving Defendants were the moving force behind the constitutional violation and exhibited deliberate indifference to Plaintiff's rights. Once again, Plaintiff has failed to do so because the complaint contains no well-pleaded allegations regarding any specific conduct by the Moving Defendants. The facts underlying the alleged deprivation of Plaintiff's rights by Defendant Rucker appear to have occurred primarily outside of the PBPP offices. Plaintiff has not pled any facts which would raise a reasonable inference that Moving Defendants were involved in and/or placed on notice of Defendant Rucker's behavior and/or constitutional violations. Accordingly, since Plaintiff has

11

failed to allege facts that could establish that Moving Defendants were personally involved in any constitutional violation and/or had actual or constructive notice of a constitutional violation, her failure to properly screen, hire, train, and/or supervise claims and her constitutionally inadequate policies and procedures claim fail and are, therefore, dismissed.

*Plaintiff's § 1983 Civil Conspiracy Claim*

At Count VIII of her complaint, Plaintiff avers that Moving Defendants, amongst themselves and with the other defendants, conspired to violate Plaintiff's constitutional rights. (Compl. at ¶ 202). To assert a viable conspiracy claim under § 1983, a plaintiff must allege facts to show that "two or more conspirators reached an agreement to deprive the plaintiff of a constitutional right under color of state law." *Langweiler*, 2010 WL 5393529, at *5. A plaintiff must allege specific facts describing the period of the conspiracy, the object of the conspiracy, and actions of the conspirators taken to achieve that purpose. *Id.*; *see also Thomas v. Shaw*, 632 F. App'x 716, 719 (3d Cir. 2015) (discussing that a plaintiff must allege "specific facts which tend to show a meeting of the minds and some type of concerted activity" and cannot rely "merely on subjective suspicions and unsupported speculation."); *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa Aug. 24, 2000) (holding that a plaintiff "must make 'specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'"). A complaint that simply uses the "words 'conspiracy' or 'acted in concert,'" without more, does not satisfy the required pleading standard. *Langweiler*, 2010 WL 5393529, at *6.

In their motion to dismiss, Moving Defendants argue that Plaintiff's conspiracy claim fails because it consists only of broad and conclusory allegations without the requisite underlying facts. This Court agrees. Plaintiff's contention that Moving Defendants "acted in concert and

conspired" to deprive Plaintiff of her constitutional rights is merely a conclusory allegation not entitled to the presumption of truth. (Compl. at ¶ 201); *see Twombly*, 550 U.S. at 555 (discussing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiff has not pled facts to raise a plausible inference that Moving Defendants jointly agreed to violate Plaintiff's constitutional rights. Further, the complaint is devoid of the required specificity. Without more, Plaintiff's allegations regarding her civil conspiracy claim rely solely on unsupported speculation and do not satisfy the *Twombly* pleading standard. Therefore, this claim is dismissed.

## CONCLUSION

For the foregoing reasons stated herein, Moving Defendants' motion to dismiss is granted. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.